IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ABDOLLAH ABDOLLAHI, et al.,
Plaintiffs,
v. Case No. 1:19-cv-03688-ABJ
NATIONAL IRANIAN TANKER COMPANY,
ALI RABIEI, and ALAEDDIN BOROUJERDI,
Defendants.

---

**SECOND SUPPLEMENTAL DECLARATION OF JACK ROBERTS**

I, JACK ROBERTS, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 as follows:

1. I am the same person who executed the Declaration dated 15 October 2025 (the "Declaration") and the Supplemental Declaration concerning the authentication of Exhibits H and I (the "Authentication Declaration") previously submitted in this action under the pseudonym "Jack Roberts." I use that pseudonym for the reasons stated in paragraph 2 of the Declaration. I have authorized Plaintiffs' counsel to lodge with the Court, under seal and for the Court's review only.

2. I incorporate the Declaration and the Authentication Declaration by reference. Except where I say otherwise, the matters stated here are within my personal knowledge.

3. Corrections to exhibit references in the Declaration. Paragraph 13 of the Declaration cites "Exhibit E" for the contemporaneous public statement terminating the search for the crew. That statement is attached to this declaration as Exhibit E-1. The two payment confirmations that were bound as Exhibit E to the Declaration are re-designated Exhibit J, described in paragraph 9 below. In paragraphs 24 to 27 and the figure captions, the photograph of the Sanchi's starboard side taken on 12 January 2018 is Exhibit A, the second

photograph is Exhibit B, and the general-arrangement drawing showing the lifeboat positions is Exhibit C. In paragraphs 31 and 33, the documents described as a bill of lading are two ship's "Landing Reports" (Exhibit G), which record the landing of the containers from the vessel to a shore agent.

4. The payment confirmations issued by the International Affairs division of the National Iranian Oil Company ("NIOC") and the credit and debit advices issued by the banks at which NITC's accounts were held.

5. NITC's international commercial obligations — charter hire and demurrage receivable from NIOC and other charterers; premiums to its protection-and-indemnity and hull insurers; fees to its classification society; port, agency and bunker costs abroad; and the dollar portion of the wages and benefits of its seafarers under the collective bargaining agreement with the Iranian Merchant Mariners' Trade Union — were denominated in United States dollars and were settled in United States dollars. NITC did not keep those obligations in dollars because its counterparties required it; it kept them in dollars because the dollar was the currency of its business.

**The ALP Shipping Enterprise Limited account**

6. ALP Shipping Enterprise Limited ("ALP") is a company incorporated in Malta and owned by NITC. It was managed from NITC's office in Sharjah, United Arab Emirates, whose managing director is copied on the confirmations described below as "Alp Shipping Enterprise Limited – NITC Sharjah MD."

7. Account No. 1360000100000731109, in the name of ALP Shipping Enterprise Limited, was the dollar account through which NITC received its dollar revenue and paid its dollar

obligations during the years covered by the records described below. The account was held at the Export-Import Bank of China in Beijing, whose SWIFT code EIBCCNBJ appears on the confirmations. NITC's Financial Director controlled the account; payments from it were made on NITC's instructions, and NIOC International Affairs executed payments for NITC's account from it and credited NITC's receivables to it.

8. It was NITC's practice to conduct its dollar business in the name of ALP rather than in its own name. NITC's own name appears on international sanctions lists; ALP's does not.

**The payment records (Exhibits J and K)**

9. Exhibit J consists of two NIOC International Affairs "View Transaction Details – Telegraphic Transfer" confirmations addressed to the NITC Financial Director, No. EIO-13429 dated 21 May 2014 (transaction date 15 May 2014, US$127,975.50) and No. EIO-16901 dated 27 October 2015 (transaction date 20 October 2015, US$312,009.00). Each records a credit to the ALP account of demurrage owed by NIOC to NITC under NITC's charters, routed to the Export-Import Bank of China through Bank of China, Beijing (BKCHCNBJ), as intermediary.

10. Exhibit K consists of two NITC "Invoice Status Reports" dated 2 February 2015 and 8 February 2016 and eleven NIOC International Affairs confirmations, Nos. ALP-00288 (10 December 2014), ALP-00204 (14 December 2015), ALP-00210 (21 December 2015), ALP-00198 (10 November 2016), ALP-00217 (12 December 2016), ALP-00104 (7 June 2017), ALP-00112 (26 June 2017), ALP-00137 (11 June 2018), ALP-00309 (26 November 2018), ALP-00217 (15 July 2019) and ALP-00392 (27 November 2019), each recording a telegraphic transfer in United States dollars from the ALP account to Bureau Veritas,

NITC's classification society, at HSBC Bank Middle East, Dubai (BBMEAEAD), in payment of the class invoice identified on its face. The amounts range from US$4,681.80 to US$31,779.27 and total US$166,611.77. The Invoice Status Reports show that Bureau Veritas rendered these invoices in United Arab Emirates dirhams; NITC converted them and paid them in dollars. The notation “Charges: OUR” on each confirmation means that NITC bore all bank charges on the payment, including the charges of any intermediary bank.

11. Documents in Exhibits J and K are in the format of the NIOC International Affairs confirmations and NITC Invoice Status Reports. The reference numbers, account number, bank codes, invoice numbers and amounts are internally consistent and consistent with one another. I have no doubt that they are genuine.

12. The records span December 2014 to November 2019. They show the same account, the same practice and the same counterparties before the casualty, during the period after 16 January 2016 when NITC's name had been removed from the United States list of specially designated nationals, and after 5 November 2018 when it was restored to that list. The practice did not change.

**How NITC's dollar payments were routed**

13. When I monitored the receipt of dollar payments to NITC, the credit advices and SWIFT confirmations I reviewed identified, in addition to the paying bank and NITC's receiving bank, the intermediary bank through which the dollar payment had been routed.

14. For payments in United States dollars, the intermediary bank identified on those advices was a bank in New York. The banks I recall seeing identified in that capacity were. The

advices also showed the intermediary bank's charges deducted from the amount credited, which is why NITC instructed “Charges: OUR” on its outgoing payments so that its counterparties received the invoiced amount in full.

15. The dollar payments made from the ALP account were routed in the same way. A dollar payment from a bank in Beijing to HSBC Bank Middle East in Dubai does not pass directly between those banks; it is settled through their United States dollar correspondents in New York.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Where I state a matter on information received from others, I have said so and have identified the source as specifically as I safely can.

Executed on September __29_, 2026.

J. Roberts

“Jack Roberts”